**Safwat GABALLAH, Plaintiff,**

v.

**PG & E and Does 1 through 1,000, Defendants.**

**No. C–89–0770–WWS–TSC.**

United States District Court, N.D. California.

May 10, 1989.

T. Patrick Hannon, Campbell, Cal., for plaintiff.

Pamela Christensen, John R. Low, San Francisco, Cal., for defendants.

MEMORANDUM OF DECISION
AND ORDER

SCHWARZER, District Judge.

This case once again raises the question whether federal regulation of the subject matter of a state court action permits its removal to federal court.

Plaintiff, a former employee of defendant PG & E at its Diablo Canyon nuclear power plant, sues for wrongful discharge. He asserts that he was terminated for having brought to his employer's attention safety concerns arising from alleged discrepancies between the "as built" drawings, on which PG & E's seismic safety calculations were based, and the true conditions of the plant. He alleges that seismic safety at Diablo Canyon is a matter of "extreme public policy." Plaintiff seeks compensatory and punitive damages for discharge in violation of public policy and for intentional infliction of emotional distress.

■ PG & E removed the action to this Court alleging federal question jurisdiction under the Atomic Energy Act of 1954 ("AEA"), 42 U.S.C. §§ 2011 et seq., and the Energy Reorganization Act of 1974 ("ERA"), 42 U.S.C. §§ 5801 et seq.[1] In particular, PG & E contends that plaintiff's claim is pre-empted by section 210 of the ERA, 42 U.S.C. § 5851. The Court granted plaintiff's motion to remand and ordered PG & E to pay $350 for plaintiff's costs including attorneys' fees. PG & E has moved for reconsideration of the remand order.

■ The issue before the Court is whether the complaint must be read as alleging a federal law cause of action over which this Court has original jurisdiction. Under the well-pleaded complaint rule, an action is removable if the only claim that could be asserted on the facts alleged arises under federal law. If the complaint alleges only state law claims, this requires a determination that the pre-emptive effect of the federal law is so powerful that it displaces entirely any state law claim on the subject. *Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 23, 103 S.Ct. 2841, 2853, 77 L.Ed.2d 420 (1983). It is not sufficient that federal law may provide a defense which would defeat the state law claim. *Id.,* 463 U.S. at 9–10, 103 S.Ct. at 2846–47.

By their terms the AEA and the ERA do not pre-empt state law with respect to claims by employees. *Cf.* Employees Retirement Income Security Act, 29 U.S.C. § 1144(a) ("the provisions of this [act] ... shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan"). Section 210(a) merely prohibits discrimination against employees on the basis of the employee's having commenced, testified, or assisted in any proceeding under the AEA. And section 210(b) permits an employee to file a complaint with the Secretary of Labor and, if the charge of discrimination is sustained, to obtain reinstatement and recover compensatory damages. 42 U.S.C. §§ 5851(a), (b).

■ In the absence of explicit language, Congressional intent to pre-empt state law may be found from a scheme of federal regulation so pervasive that no room is left for states to supplement it. *Pacific Gas & Elec. Co. v. Energy Resources Comm'n,* 461 U.S. 190, 203–04, 103 S.Ct. 1713, 1721–22, 75 L.Ed.2d 752 (1983). Even if an entire area of law is not pre-empted, state law is pre-empted to the extent that it (1) conflicts with federal law or (2) interferes with the enforcement of federal law. *Id.*

PG & E argues that the AEA and the ERA "pervasively and thoroughly regulate all aspects of the design, construction, and operation of nuclear power plants." (Removal Pet. 2.) But that is a considerable exaggeration of the meaning and significance that has been accorded these Acts by the Supreme Court. *See, e.g., Silkwood v. Kerr–McGee Corp.,* 464 U.S. 238, 249–56, 104 S.Ct. 615, 621–26, 78 L.Ed.2d 443 (1984) (AEA does not pre-empt state law personal injury claim).

With respect to conflict between state and federal law, PG & E argues that, in the absence of pre-emption, there could be a "deluge of discordant state court rulings

---

**1.** Counsel have failed to comply with the removal procedure under 28 United States Code sections 1446 and 1447, as amended by Public Law Number 100–702, section 1016 (Nov. 19, 1988). Removal is to be accomplished by filing a notice of removal, not a petition. The petition filed in this case was untimely, not having been filed within thirty days of service of the complaint. Plaintiff having failed, however, to object within the statutory thirty day period for filing a motion to remand on non-jurisdictional grounds, the defect is waived.

on the protection to be afforded employees raising nuclear safety concerns," there would be protracted state court litigation contravening the Congressional mandate for a prompt resolution of these kinds of complaints, and section 210 would be nullified because plaintiffs would generally prefer a jury trial and the possibility of punitive damages available in state court. (PG & E Memo. 9.)

These contentions are not persuasive. If anything, they show that the remedy under section 210 would be considered inadequate by many plaintiffs and hence not likely to have been intended as exclusive by Congress. In any event, there is no showing that the conflict between state and federal law is so pronounced that "compliance with both ... [is] a physical impossibility." *Pacific Gas & Elec. Co.*, 461 U.S. at 204, 103 S.Ct. at 1722.

The issue of conflict was addressed in *English v. General Elec. Co.*, 683 F.Supp. 1006, 1013–14 (E.D.N.C.1988), *aff'd*, 871 F.2d 22 (4th Cir.1989). Relying on subsection (g), which bars relief under section 210 for any employee who, without direction from the employer, intentionally violates the AEA, that court postulated hypothetical cases in which an employee, though barred from recovering under section 210, could nonetheless recover in a state law wrongful termination action. That court viewed subsection (g) as "strong evidence of Congress' intent to pre-empt state actions for wrongful discharge and other discrimination with respect to nuclear whistleblowers." *Id.*, 683 F.Supp. at 1014.

■ This Court must respectfully disagree. First, there is no evidence that Congress intended to do more than bar a federal remedy to employees who themselves intentionally violated the AEA; to say that it meant to bar them from any state law remedy would be pure speculation. Second, even if it did, its purpose would be served by simply treating subsection (g) as a federal law defense available to employers in appropriate state court cases just as other federal law defenses. *See, e.g., Ethridge v. Harbor House Restaurant*, 861 F.2d 1389 (9th Cir.1988) (state law claim barred by provisions of National Labor Relations Act guarantying right to collective bargaining but not removable). Finally, even if some actions were pre-empted by subsection (g), it would not be necessary to bar all wrongful discharge actions, including those in which it would not be in issue.

Even in the absence of a direct conflict with federal law, however, state law may be pre-empted where the federal interest is so dominant that the federal regulatory system precludes enforcement of state laws on the same subject. *Pacific Gas & Elec. Co.*, 461 U.S. at 204, 103 S.Ct. at 1722. Although section 210 affords protection to whistleblowers and provides them with a remedy in case of violation, it can hardly be regarded as pervasive federal regulation of the subject of employer-employee relations in the nuclear power industry. And even though Congress "has occupied the entire field of nuclear safety concerns," *id.*, 461 U.S. at 212, 103 S.Ct. at 1726, it has not thereby displaced state law remedies for persons with safety-related claims. In *Silkwood* the Supreme Court acknowledged the tension between exclusive federal control of safety and application of state rules of liability for injuries, but concluded that Congress intended to allow them to coexist. *Silkwood*, 464 U.S. at 256, 104 S.Ct. at 625. *Silkwood* involved a state law negligence claim in which the defendant's failure to comply with federal nuclear safety regulations was the primary evidence of negligence. The Court held that the award of punitive damages for an incident that could be penalized under federal law did not frustrate the federal regulatory scheme:

> Congress did not believe that it was inconsistent to vest the NRC with exclusive regulatory authority over the safety aspects of nuclear development while at the same time allowing plaintiffs ... to recover for injuries caused by nuclear hazards.

*Id.*, 464 U.S. at 258, 104 S.Ct. at 626.

It is difficult to see why that reasoning does not apply equally to relief for whistleblowers. It is true that the AEA provides no remedy whatever for persons injured by nuclear hazards while providing one to whistleblowers. But that remedy is minimal; it affords neither punitive damages

nor a jury trial. There is no apparent reason why Congress should have wanted to bar persons who complained about safety violations from a jury trial and the recovery of punitive damages but not to bar persons who suffered injuries from those violations. *See Stokes v. Bechtel N. Am. Power Corp.*, 614 F.Supp. 732 (N.D.Cal. 1985).

The court in *Snow v. Bechtel Constr. Inc.*, 647 F.Supp. 1514 (C.D.Cal.1986), reached a contrary result, albeit only as an alternate ground for granting summary judgment in a wrongful discharge action that was barred in any event by section 301 of the Labor–Management Relations Act ("LMRA"). In holding that section 210 provided the exclusive remedy for a whistleblowing claim, the *Snow* court cited the AEA's legislative history which reflects that section 210 was modeled on a similar provision in the Mine Safety and Health Act ("MSHA"). *Id.*, 647 F.Supp. at 1517 (quoting *Mackowiak v. University Nuclear Systems, Inc.*, 735 F.2d 1159, 1163 (9th Cir.1984) (AEA and MSHA both "share a broad, remedial purpose of protecting workers from retaliation based on their concerns for safety")). The *Snow* court then relied on the decision in *Olguin v. Inspiration Consol. Copper Co.*, 740 F.2d 1468 (9th Cir.1984), for the proposition that the MSHA was the exclusive remedy for whistleblowers, pre-empting any state law, and concluded that, therefore, the analogous provision in the AEA pre-empts state law.

*Olguin*, however, like *Snow*, was a section 301 action in which state law was pre-empted by the LMRA. Olguin had alleged several claims barred by the collective bargaining agreement which governed his employment. In addition, as an alternate claim, he alleged that he had been discharged in violation of "public policy enunciated in the Statutes of the United States ... including ... the Federal Mine Safety and Health Act ... and the National Labor Relations Act." *Olguin*, 740 F.2d at 1475. The court held that "Olguin explicitly invoked federal law in this cause of action and it was therefore removable, if not under section 301, then under the general federal question statute." *Id.* It dis-

tinguished *Garibaldi v. Lucky Food Stores, Inc.*, 726 F.2d 1367 (9th Cir.1984), *cert. denied*, 471 U.S. 1099, 105 S.Ct. 2319, 85 L.Ed.2d 839 (1985), which held that an employee's wrongful termination claim alleging retaliation for his having reported a violation by his employer of local health regulations was not pre-empted because the health regulations reflected a strong state policy. Olguin did not specify any state policy that was violated by his discharge.

*Olguin* cannot be regarded as standing for the proposition that section 210, or even the corresponding provision of the MSHA, bars an employee from maintaining a state court action for retaliatory discharge. In view of section 210's acknowledged "broad, remedial purpose of protecting workers from retaliation," *Mackowiak*, 735 F.2d at 1163, such a holding should not be inferred from a decision which did not consider the specific provisions of the statute or the regulatory context in which it functions. *Cf. Lingle v. Norge Div. of Magic Chef, Inc.*, — U.S. ——, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988) (state anti-retaliation statute not pre-empted by LMRA where no need to construe collective bargaining agreement.).

It must be concluded, therefore, that section 210 of the ERA does not pre-empt a state court action based on state law, including a discharge in violation of state public policy. That, however, does not dispose of the pending motion.

■ Plaintiff has alleged a termination in violation of "Federal nuclear energy safety policy." Thus, resolution of his claim would necessarily require interpretation of federal policy, possibly creating a federal question within the jurisdiction of this Court under 28 U.S.C. section 1331. *See Olguin*, 740 F.2d at 1475.

In *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986), the Supreme Court considered under what circumstances the "presence of a claimed violation of [a federal] statute as an element of a state cause of action," 478 U.S. at 814, 106 S.Ct. at 3235, gives rise to a federal question. *Merrell Dow* held that a state negligence claim

alleging that a rebuttable presumption of negligence could be drawn from the defendant's violation of the Federal Food, Drug, and Cosmetic Act ("FDCA") did not fall within the district court's federal question jurisdiction. The critical factor for this holding was that Congress had not created a federal remedy for violations of the FDCA.

In interpreting *Merrell Dow*, the Ninth Circuit has held that if federal law does not provide a private right of action enforceable in federal court, then a state law action based on its violation does not raise a substantial federal question sufficient to create federal question jurisdiction. *Utley v. Varian Assoc., Inc.*, 811 F.2d 1279, 1283 (9th Cir.), *cert. denied,* — U.S. —, 108 S.Ct. 89, 98 L.Ed.2d 50 (1987). In *Utley,* the plaintiff, who was black, was discharged by his employer. He alleged that this discharge was in violation of a federal executive order requiring government contractors to practice affirmative action and, therefore, was actionable under state employment discrimination and unlawful business practice statutes. Because the only federal remedy for violation of this executive order was administrative, the Ninth Circuit, while noting that the plaintiff might have been able to state a claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(f)(1), held that the plaintiff had not stated a federal question under *Merrell Dow*. 811 F.2d at 1283 & n. 2.

*Utley* is squarely on point. In section 210, Congress created a federal remedy for retaliation against whistleblowers. However, this remedy is administrative, providing only for investigation by the Secretary of Labor. 42 U.S.C. § 5251(b). Under *Utley* this is insufficient to satisfy the requirement of *Merrell Dow*. Therefore, plaintiff's wrongful discharge claim does not state a federal question.

For the reasons stated, the motion to reconsider is denied in all respects.

IT IS SO ORDERED.