Gerald John **WAGNER**, Plaintiff,

v.

**CAMPBELL COUNTY, WYOMING**, a Wyoming governmental entity; **Burlington Northern Railroad Company**, a corporation; **Jerry Doughman**, officially and individually; and **John and Jane Does I–20**, officially and individually, Defendants.

**No. C88–0049J.**

United States District Court, D. Wyoming.

Aug. 19, 1988.

---

Billie Ruth Edwards and Marvin J. Johnson, Edwards & Johnson, Cheyenne, Wyo., for plaintiff.

George E. Powers, Jr., Godfrey & Sundahl, Cheyenne, Wyo., for Burlington Northern R. Co. and Doughman.

## ORDER ON MOTION TO DISMISS OF DEFENDANTS BURLINGTON NORTHERN RAILROAD COMPANY AND JERRY DOUGHMAN

JOHNSON, District Judge.

### I. RULE 12(b)(6) MOTIONS IN GENERAL

To be sufficient, a complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). This standard does not require detailed facts in support of the claim, but instead only fair notice of what the plaintiff's claim is and the grounds upon which it rests. *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Before a court may dismiss a complaint for failure to state a claim upon which relief can be granted, it must appear beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief. All well-pleaded facts, as opposed to conclusory allegations, must be taken as true. A plaintiff is entitled to all reasonable inferences, and the pleadings must be liberally construed. *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir.1984); *Chavez v. City of Santa Fe Housing Authority*, 606 F.2d 282, 283 (10th Cir.1979); *Bryan v. Stillwater Board of Realtors*, 578 F.2d 1319, 1321 (10th Cir.1977).

### II. PLAINTIFF'S ALLEGATIONS

On 21 July 1975, defendant, Burlington Northern Railroad Company, hired plaintiff, Gerald John Wagner. On 22 February 1984, plaintiff was performing his duties as a conductor on a train operated by BNRC. At Donkey Creek, Wyoming, the train upon which plaintiff was traveling was met by two BNRC officers, a trainmaster and a special agent. These officers transported plaintiff and his personal belongings to the Burlington Northern Depot in Gillette, Wyoming. Waiting at the depot were another BNRC officer, Assistant Superintendent Jerry Doughman, and an undersheriff from Campbell County. Plaintiff was taken into Mr. Doughman's office, which was secured by two men with their backs to the door.

After being taken into this office, plaintiff was informed that he was suspected of carrying large amounts of narcotics and firearms for resale to railroaders. Plaintiff inquired as to whether a valid search warrant had been obtained, and was told that there had not been sufficient time to do so. Plaintiff requested an attorney and a union representative, but this request was again denied on the basis of time. Plaintiff stated his intention to refuse the search. Mr. Doughman told him that he would be searched one way or another before. he left the room. Under the implied threat of violence, plaintiff was forced to open his shirt and lower his trousers. Plaintiff's grip (travel bag) was also searched. No narcotics or firearms were found on plaintiff's person, in his clothes, or in his grip. Plaintiff was then permitted to leave.

Based upon these factual allegations, plaintiff has asserted claims for relief based on violation of due process and equal protection, deprivation of liberty without due process of law, invasion of privacy, infliction of emotional distress, negligence, breach of public policy, breach of contract, breach of the covenant of good faith and fair dealing, conspiracy, failure to prevent conspiracy to violate civil rights, and exemplary damages.

### III. FRAMEWORK

In 1906 Congress enacted the Federal Employer's Liability Act, 45 U.S.C. § 51 et seq., which provides a federal remedy for railroad workers who suffer personal injuries caused by the negligence of their employer or fellow employees. *Atchison, Topeka and Santa Fe Railway Company v. Buell*, 480 U.S. 557, 107 S.Ct. 1410, 1413, 94 L.Ed.2d 563 (1987). The federal remedy enabled injured railroad workers to overcome a number of traditional tort defenses at state law, including contributory negligence, contractual waiver of liability, the fellow-servant rule, and assumption of the risk. *Lewy v. Southern Pacific Transportation Company*, 799 F.2d 1281, 1287–88 (9th Cir.1986) (citing *Lancaster v. Norfolk and Western Railway Company*, 773 F.2d 807, 813 (7th Cir.1985)), *cert. denied*, —— U.S. —— 107 S.Ct. 1602, 94 L.Ed.2d 788. A primary purpose of the Act was to "facil-

itate recovery in meritorious cases." *Buell,* 107 S.Ct. at 1413.

■ In 1926 Congress enacted the Railway Labor Act, 45 U.S.C. § 151 et seq., which provides "a comprehensive framework for the resolution of labor disputes in the railroad industry." *Buell,* 107 S.Ct. at 1414. In enacting the RLA, Congress sought to "promote stability in the railroad industry and to provide for prompt and efficient resolution of labor-management disputes arising out of railroad collective bargaining agreements." *Lewy,* 799 F.2d at 1289 (citing *Union Pacific Railroad Company v. Sheehan,* 439 U.S. 89, 99 S.Ct. 399, 58 L.Ed.2d 354 (1978)), *reh'g denied,* 439 U.S. 1135, 99 S.Ct. 1060, 59 L.Ed.2d 98. To free the courts from railroad labor disputes, Congress in the RLA established elaborate administrative procedures to resolve both major[1] and minor disputes. A minor dispute is one "growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions." 45 U.S.C. § 153 First (i); *Buell,* 107 S.Ct. at 1414. If a claim is properly characterized as a "minor dispute," state law is preempted and exclusive jurisdiction lies in the dispute resolving mechanisms of the RLA. *Magnuson v. Burlington Northern, Inc.,* 576 F.2d 1367 (9th Cir.1978). Judicial review of the resulting administrative decision is "among the narrowest known to the law." *Sheehan,* 439 U.S. 89, 91, 99 S.Ct. 399, 401, 58 L.Ed.2d 354 (1978).

■ When a railroad employee's claim does not arise from a discharge or solely out of the employment contract itself, the courts have not classified it as a minor dispute. *Merola v. National Railroad Passenger Corporation,* 683 F.Supp. 935, 938 (S.D.N.Y.1988). In such circumstances state law is not preempted by the RLA and an employee may avail himself of it. *Cf. Buell,* 107 S.Ct. at 1415 ("The FELA not only provides railroad workers with substantive protection against negligent conduct that is independent of the employer's obligations under its collective-bargaining agreement, but also affords injured workers a remedy suited to their needs, unlike the limited relief that seems to be available through the Adjustment Board"); *Local No. 57 v. Betchtel Power Corporation,* 834 F.2d 884, 889–90 (10th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 2822, 100 L.Ed.2d 923, (Construction workers' claims based on the Utah black-listing laws were not created by terms of the collective bargaining agreement and therefore were not preempted by the Labor Management Relations Act).

## IV. THE FEDERAL CONSTITUTIONAL CLAIMS

Defendants contend that the Railway Labor Act, 45 U.S.C. § 151 et seq., preempts this court's subject matter jurisdiction to hear plaintiff's claims for violation of due process and equal protection, deprivation of liberty without due process of law, and breach of public policy.[2] They view plaintiff's entire complaint as stating nothing more than a "minor dispute" under the RLA. If this view were correct, jurisdiction would be statutorily entrusted to the National Railroad Adjustment Board and beyond this court. Having reviewed the law on the subject, this court must conclude that defendant's view is incorrect.

■ In *McAlester v. United Air Lines, Inc.,* 851 F.2d 1249 (10th Cir.1988), the court faced the issue of whether the RLA barred an airline employee's § 1981 claim of racial discrimination. Citing *Andrews v. Louisville and Nashville Railroad Co.,* 406 U.S. 320, 325, 92 S.Ct. 1562, 1565, 32 L.Ed.2d 95 (1972), the court acknowledged that Congress had intended that the RLA dispute resolution be mandatory for a *state* wrongful-discharge claim based squarely

---

1. A "major dispute" arises "out of the formation or change of collective bargaining agreements covering rates of pay, rules, or working conditions." *Buell,* 107 S.Ct. at 1414 (quoting *Detroit & T.S.L.R. Co. v. Transportation Union,* 396 U.S. 142, 145 n. 5, 90 S.Ct. 294, 296 n. 5, 24 L.Ed.2d 325 (1969)). No party contends that this case involves a major dispute.

2. Plaintiff has dismissed its 42 U.S.C. § 1985 claims alleging conspiracy.

on an alleged breach of a collective bargaining agreement. The court refused to be bound by this result in cases involving "independent rights or claims derived from *federal* statutory schemes" such as the Federal Employer's Liability Act; the Civil Rights Act of 1871, 42 U.S.C. § 1983; the Fair Labor Standards Act, 29 U.S.C. §§ 201–19; and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. *Id.* at 1254. The court later stated that "[b]ecause a plaintiff's § 1981 action sounds in tort and is based upon a federal statutory rather than contractual duty, McAlester's claim cannot be a 'minor dispute' subject to the exclusivity provisions of the RLA." *Id.* at 1255. The same is true of Mr. Wagner's § 1983 claims, and the RLA does not preclude this court from hearing them.

### V. STATUTE OF LIMITATION UNDER 42 U.S.C. § 1983

■ Congress has not provided a federal statute of limitations for actions arising under the Civil Rights Act of 1871. Instead, the courts must refer to and imply the applicable state law of the jurisdiction in which the cause of action arose. 42 U.S.C. § 1988. In *Garcia v. Wilson*, 731 F.2d 640, 651 (10th Cir.1984), the court concluded "that every section 1983 claim is in essence an action for injury to personal rights. Henceforth, all section 1983 claims in this circuit will be uniformly so categorized for statute of limitations purposes." In *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), the United States Supreme Court affirmed the Tenth Circuit. The Supreme Court stated that characterization of section 1983 was a matter of federal law, *id.* at 268, 105 S.Ct. at 1942, and directed that principles of uniformity required the courts "to select, in each State, the one most appropriate statute of limitations for all § 1983 claims." *Id.* at 275, 105 S.Ct. at 1946. Agreeing with the Tenth Circuit, the Supreme Court

announced that section 1983 claims would best be governed by a state's statute of limitations for personal injury actions. The Court reached this conclusion after considering the nature of the section 1983 remedy and the federal interest in not discriminating against the federal civil rights remedy. 471 U.S. at 276, 105 S.Ct. at 1947. The Supreme Court did not give guidance as to which personal injury statute should apply when a state has more than one. Wyoming provides a one-year limitation period for personal injury actions often viewed as intentional torts. Wyo.Stat. § 1–3–105(a)(v)(A–C). Injuries arising from negligence are provided a four-year limitation period. Wyo.Stat. § 1–3–105(a)(iv)(C).

■ Defendants acknowledge that the Tenth Circuit Court of Appeals has intimated that Wyoming's four-year statute would apply. *See Corbitt v. Andersen*, 778 F.2d 1471, 1474 n. ** (10th Cir.1985). Although defendant is correct that this statement is dicta, it followed the United States Supreme Court's decision in *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed. 2d 254 (1985). As such, it guides this court as to the Tenth Circuit's view of the applicable statute of limitations in Wyoming. This court concludes that the Tenth Circuit would apply the four-year statute and finds nothing inconsistent with that in *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938. Accordingly, plaintiff's section 1983 claims are timely and will be allowed to go to trial.

### VI. PLAINTIFF'S PENDENT STATE CLAIMS [3]

#### A. Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing

■ In bringing these claims, plaintiff necessarily requires interpretation of the collective bargaining agreement. Exclusive jurisdiction for such claims falls within arbitration procedures under the RLA.

---

**3.** Plaintiff describes his remaining claims as pendent state claims arising under the law of Wyoming. Complaint, ¶ 2. Elsewhere in the complaint, however, plaintiff states the jurisdictional prerequisites to the Federal Employer's Liability Act. Defendants' pleadings have as-

sumed that these claims are stated under FELA. Although the court does not believe that defendants' assumption is correct, it notes that any FELA claims would be barred by the FELA's three year statute of limitations. 45 U.S.C. § 56.

This court has no jurisdiction to hear these claims. *See Andrews,* 406 U.S. at 323–24, 92 S.Ct. at 1564–65; *Hodges v. Atchison, Topeka & Santa Fe Railway Company,* 728 F.2d 414, 416–17 (10th Cir.1984).

### B. Negligence

■ The basis of this claim is that defendants breached a duty to fully and fairly investigate and explore any accusations before subjecting plaintiff to a strip search and before searching his personal belongings. Complaint, ¶ 62. The stated right to a fair investigation arises under the collective bargaining agreement and therefore requires interpretation of it. Exclusive jurisdiction for this claim falls within the arbitration procedures under the RLA. This court has no jurisdiction to hear this claim. *Magnuson,* 576 F.2d at 1369–70.

### C. Invasion of Privacy

■ This claim does not require interpretation of the collective bargaining agreement and is based on legal rights apart from that agreement. To hold otherwise would give a railroad free reign to commit all means of outrageous conduct without any responsibility in a court of law. *See Raybourn v. Burlington Northern Railroad,* 602 F.Supp. 385, 387–88 (W.D.Mo. 1985). Nothing in the RLA's definition of minor dispute compels or even suggests such a result. *See* 45 U.S.C. § 153 First (i). A minor dispute does not arise simply because the conduct which is the subject of the complaint occurs in an employment context. *But see Majors v. U.S. Air, Inc.,* 525 F.Supp. 853, 857 (D.Md.1981) ("So long as his claim is founded on some incident of the employment relation, it is immaterial, for purposes of coverage by the Railway Labor Act, whether the claim is expressly covered by the collective bargaining agreement, or is independent of that agreement") (citing *Elgin J. & E. Ry. Co. v. Burley,* 325 U.S. 711, 723, 65 S.Ct. 1282, 1289–90, 89 L.Ed.2d 1886 (1945)).

■ Although the RLA does not preempt plaintiff's claim for invasion of privacy, that claim is barred by the Wyoming statute of limitations. Plaintiff bases this claim on his being placed in a false light resulting in damage to his good name and reputation. This court finds that the one year limitations period for libel and slander applies to this claim. Wyo.Stat. § 1–3–105(a)(v) (1977).

### D. Infliction of Emotional Distress

To the extent this claim is based on the federal constitutional claims, and therefore is based on legal rights apart from the collective bargaining agreement, it survives defendants' motion to dismiss.

IT IS THEREFORE ORDERED that defendants' motion to dismiss the federal constitutional claims is DENIED.

IT IS FURTHER ORDERED that defendants' motion to dismiss plaintiff's claims for breach of contract, breach of covenant of good faith and fair dealing, and negligence is GRANTED;

IT IS FURTHER ORDERED that defendant's motion to dismiss plaintiff's claims for infliction of emotional distress and invasion of privacy is DENIED.